# EXHIBIT B

MARK E. BURTON, State Bar No. 178400
JOSUE APARICIO, State Bar No. 322750
**HERSH & HERSH**, A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6316
(415) 441-5544

*Attorneys for Plaintiff and the Proposed Classes*

FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

FEB 27 2020

CLERK OF THE COURT
BY: _____ Deputy Clerk
ANGELICA SUNGA

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

MARIO MABANTA, on behalf of himself and all others that are similarly situated,

    Plaintiffs,

vs.

PRIME NOW LLC, a Delaware Corporation; AMAZON.COM, INC., a Delaware Corporation; and Does 1-50, inclusive,

    Defendants.

Case No. CGC-20-583296

**CLASS ACTION COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**

---

1

CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL

# INTRODUCTION

Plaintiff MARIO MABANTA on behalf of himself and all others similarly situated (collectively "Plaintiffs") bring this class action against Defendants, PRIME NOW LLC, AMAZON.COM, INC., and DOES 1-50 (collectively "Defendants"), and allege upon information and belief, except as to their own actions, the investigation of counsel, and the facts that are a matter of public record, as follows:

1. Plaintiff brings this action to obtain damages, restitution, injunctive relief, and other relief, individually and on behalf of the proposed class defined below, against Defendants.

2. Defendants are in the business of delivering a variety of groceries, household items and other consumer goods from various grocery stores, including Whole Foods, Pet Food Express, Sprouts, Bristol Farms, and other local third party stores. In order to deliver these items to customers, Defendants utilize an extensive workforce of individuals who perform the functions of shopping for, purchasing and delivering said groceries to Defendants' customers. Plaintiffs are the individuals who perform such services by utilizing a mobile application to shop, purchase and sometimes deliver groceries to the homes and businesses of Defendants' customers.

3. However, Defendants do not follow California law. Through their practices, policies and schemes, Defendants created a work structure in which Plaintiffs are required to report for work remotely two days a week, often for several hours, without compensation. As a result, Defendants failed to compensate Plaintiffs for all hours worked in violation of California law. With respect to business expenses, Defendants fail to reimburse Plaintiffs reasonable and necessary expenses, including internet costs necessary to report to work remotely two days a week.

4. Plaintiffs bring this lawsuit as a class action and assert violations of the California Labor Code, the Industrial Welfare Commission ("IWC") Wage Orders, and the Unfair Competition Law, arising from Defendants' unlawful conduct, including: (1) unpaid wages; (2) failure to reimburse for business expenses; (3) failure to pay minimum wage; (4) failure to provide rest periods; (5) failure to compensate for reporting-time; (6) failure to furnish accurate wage statements and keep accurate payroll records, (7) waiting time penalties, and (8) violation of the unfair competition law.

## JURISDICTION AND VENUE

5. Plaintiffs bring this class action pursuant to Section 382 of the California Code of Civil Procedure and seek to remedy Defendants' violations of state law, including the Labor Code, Civil Code, Unfair Competition Law, and orders promulgated by the Industrial Welfare Commission.

6. Venue is proper in this Court because, *inter alia*, Defendants engage and perform business activities in and throughout the State of California, including in San Francisco County. Class members also regularly performed work in San Francisco County and many of the acts complained of herein occurred in this judicial district.

## PARTIES

7. Plaintiff Mario Mabanta (hereinafter "Mr. Mabanta" or "Plaintiff") is an individual and a resident of the State of California. Mr. Mabanta, at all relevant times herein, was employed by Defendants in the State of California.

8. Defendant Prime Now LLC ("Prime Now"), is a Delaware Limited Liability Company that does substantial business in the State of California, including in the city and county of San Francisco. Prime Now is a wholly owned subsidiary of Amazon.Com, Inc. At all relevant times herein, Prime Now, is, and was, an employer in the transportation industry within the meaning of California's Labor Code and the Industrial Welfare Commission, Wage Order No. 9.

9. Defendant Amazon.com, Inc. ("Amazon") is a Delaware Corporation that does substantial business in the State of California, including in the city and county of San Francisco. Amazon is the parent company of Co-Defendant Prime Now, and maintains business operations throughout the United States, including within the state of California. At all relevant times herein, Amazon, as the parent company of Prime Now, is, and was, an employer in the transportation industry within the meaning of California's Labor Code and the Industrial Welfare Commission, Wage Order No. 9.

10. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiffs, who therefore sue Defendants by such fictitious names under Cal. Code of Civil

Procedure § 474. Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants designated herein as DOES is legally responsible in some manner for the unlawful acts herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct. Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known.

11. On information and belief, at all relevant times herein mentioned, each Defendant was the agent, partner, alter ego, servant, joint venturer, representative, joint employer or employee of the remaining Defendants, acted with the consent of his/her/their co-Defendants, and acted within the purpose and scope of said agency, partnership, joint venture, service or employment. Furthermore, in engaging in the conduct described below, the Defendants were all acting with the express or implied knowledge, consent, authorization, approval, or ratification of his/her/their co-Defendants.

12. In the interest of clarity, hereinafter "Defendants" refers to Defendants Prime Now LLC, Amazon.Com, Inc., and DOES 1 through 50, inclusive.

## CLASS ACTION ALLEGATIONS

13. Plaintiff Mario Mabanta brings this action as a class action pursuant to Section 382 of the Code of Civil Procedure on behalf of himself and the following class:

> All persons who worked as Prime Now Associates in the State of California for or on behalf of one or more of the Defendants from December 2015 to the present day.

14. Excluded from the Class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns and successors; (2) the judge to whom this case is assigned and any member of the judge's immediate family; and (3) claims for personal injury, wrongful death and emotional distress and claims of consequential property damage and loss.

15. Plaintiffs reserve the right to amend this Class definition if discovery or further investigation demonstrate that the Class should be expanded or otherwise modified.

///

///

### A. Numerosity

16. The members of the Class are so numerous that joinder of all members would be impracticable. The precise number of members of the Class and their identities and addresses are presently unknown to Plaintiffs, but may be ascertained from Defendants' records. If deemed necessary by the Court, members of the Class may be notified of the pendency of this action by mail and supplemented by published notice.

17. The Class is comprised of an easily ascertainable set of persons who worked for Defendants as "Prime Now Associates." Class members are easily identifiable from records maintained by, and in the possession and control of, the Defendants or otherwise readily attainable from third parties.

### B. Commonality

18. There are numerous questions of law and fact common to all Class members and those questions predominate over any questions that may affect only individual Class members, including, but not limited to, the following:

   a. Whether Defendants' conduct violated the California Labor Code and IWC Wage Order No. 9 as pled herein;

   b. Whether Defendants' conduct violated Business and Professions Code Section 17200, *et seq.*;

   c. Whether Plaintiff and the Class are entitled to equitable relief, and, if so, the nature of such relief; and

   d. Whether compensatory and other damages should be awarded to Plaintiff and Class members.

### C. Typicality

19. The claims of the representative Plaintiff are typical of the claims of the members of the Class. The representative Plaintiff, like all Class members, was not paid in accordance with California law and suffered damages as a result. The representative Plaintiff has no interest antagonistic to those of the Class and is not subject to any unique defenses.

///

### D. Adequacy

20. The representative Plaintiff will fairly and adequately represent and protect the interests of all members of the Class, and has retained counsel highly experienced in prosecuting employment class actions and complex litigation.

21. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the resources to do so. Neither Plaintiff nor his counsel has any interests adverse to those of the Class.

### E. Superiority

22. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

   a. It is economically impractical for members of the Class to prosecute individual actions;
   b. The Class is readily definable;
   c. Prosecution as a class action will eliminate the possibility of repetitious litigation; and
   d. A class action will enable claims to be handled in an orderly and expeditious manner, will conserve judicial resources, and will ensure uniformity of decisions

23. Plaintiffs do not anticipate any difficulty in the management of this litigation.

### FACTUAL ALLEGATIONS

### A. Prime Now's Business Model

24. Prime Now LLC is a grocery delivery service company that offers its customers one- and two- hour delivery on an array of grocery items, household products, electronics and even pet supplies.

25. Prime Now is currently available exclusively to members of "Amazon Prime," which is an annual paid subscription through Amazon.Com, Inc.

26. Prime Now offers Amazon Prime members in the State of California free two-hour delivery as long as the order meets the $35 minimum purchase requirement. It also offers one-hour delivery for an additional $7.99 fee.

27. Defendants offer their customers the ability to purchase groceries (and other items) from specified stores on a mobile application or website and have them delivered to their homes within one or two hours.

28. Prime Now operates by hiring and employing an extensive workforce of individuals who perform the functions of shopping for and purchasing the groceries ordered by Prime Now customers and delivering said groceries to the customers. The employees' services are fully integrated into Prime Now's business, and without them, Prime Now's business would not exist.

### B. Prime Now Associates

29. Plaintiffs are Defendants' employees who are classified as non-exempt, W-2 employees and known as Prime Now Associates ("PNA").

30. PNAs are provided a smartphone by Defendants that they can use only while on the clock to receive orders from Amazon Prime customers. Once an Amazon Prime customer places an order, the order is received on the PNAs smartphone and the PNA is tasked with collecting the items on the list, placing the items in a bag and preparing the bag to be picked up by delivery drivers who deliver them to customers' homes.

31. Defendants do not assign PNAs a schedule or regular shifts each week. Instead, Defendants hire PNAs under a "Regular Adjustable Hours" agreement, which means PNAs are required to log on to Defendants' website twice a week and select from a limited number of available shifts.

32. Every Sunday and Tuesday at around 4:15 p.m., Defendants' website releases all of the available shifts for the upcoming few days and makes them available for selection by any PNA who logs on to the website on a first come, first serve basis.

33. PNAs who fail to pick up or work any shifts for multiple weeks are subject to discipline by Defendants, including formal written reprimands and termination. Therefore, PNAs are required to log on to Defendants' website twice a week or risk losing their jobs.

34. However, Defendants hire and retain more PNAs than the amount of available shifts each week. As a result, there is not enough available shifts each week for each PNA to select at least one shift. Due to the overwhelming number of PNAs, the moment that Defendant's website makes

any shifts available, all available shifts are selected by a PNA and marked unavailable within a matter of minutes. Therefore, if a PNA has not logged on to Defendant's website by 4:15 p.m. on Sundays and Tuesdays they risk being unable to pick up any shifts at all.

35. This is enormously beneficial to Defendants because it creates a large pool of contingent workers from whom Defendants can use, if necessary, without having to compensate PNAs who are unable to obtain any shifts at all.

36. However, Defendants and/or its website are unpredictable in the times they post the available shifts each week. Although, PNAs are required to log on to Defendants' website at 4:15 p.m., shifts are not made readily available immediately at 4:15 p.m. Instead, the available shifts are often posted hours after 4:15 p.m., causing PNAs to have to wait and refresh their screens for hours until the shifts for the upcoming week are posted and designated available for selection.

37. Since Defendants require PNAs to be available every Sunday and Tuesday at 4:15 p.m., PNAs cannot commit to plans that are incompatible with logging on to a website during that time frame, such as accepting other jobs, making social plans with family and friends, and/or being in an area without internet access or cell phone data service.

38. Therefore, because Defendants significantly limit the kinds of activities PNAs can engage in during their off-duty time, PNAs are not truly off duty when logging into Defendants' website and waiting to select their shift(s).

### C. Unpaid Wages

39. Non-exempt employees, like PNAs, must be compensated for **all hours worked**, including work performed that may be outside the employee's regular workday. It is well-established that any time during which the employee is "suffered or permitted to work" encompasses the time during which the employer knew or should have known that the employee is working on its behalf.

40. California's IWC Wage Order No. 9 defines "Hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (8 CCR §11090(2)(H).)

41. Since Defendants significantly limit the activities PNAs can engage in, at, or around 4:15 p.m. every Sunday and Tuesday, and require that PNAs log on to a website twice a week for

several hours, the time PNAs spend viewing and selecting their upcoming shifts is subject to the control of their employer, and therefore constitutes hours worked.

42. By failing to compensate PNAs for all hours worked, Defendants have and continue to violate Labor Code section 204, which requires employers to pay their employees full wages when due.

### D. Failure to Reimburse Business Expenses

43. PNAs cannot view and select shifts each week without logging on to Defendants' website remotely. Therefore, logging on to Defendants' website remotely is a requirement of the job. Although Defendants provide a smartphone for PNAs to use while receiving customer orders, PNAs are not permitted to take said smartphones home or use them to view and select shifts on Sundays and Tuesdays remotely.

44. Accessing Defendants' website from home requires PNAs to have access to the internet and a device that can access the internet. However, Defendants have failed to reimburse PNAs for the cost associated with accessing the internet remotely, including internet or cell phone data access.

### E. Failure To Pay Minimum Wage

45. In light of the fact that Defendants fail to compensate PNAs for all hours worked, including the time spent waiting for, viewing and selecting available shifts for the upcoming week, the Plaintiffs' hourly wages often fell below the applicable minimum wage requirements.

46. In addition, Defendants' failure to reimburse PNAs for necessary business expenditures, such as internet costs, caused the Plaintiffs' hourly wages to fall even further below the applicable minimum wage.

### F. Failure To Provide Rest Periods

47. Since Defendants' customers are guaranteed one or two hour delivery of their groceries, Defendants require PNAs to continuously collect and bag grocery items under unrealistic time constraints. As a result, PNAs regularly worked and continue to work more than four hours per shift without being permitted an uninterrupted ten-minute rest period.

48. In addition, Defendants do not provide Plaintiffs with an additional hour of pay for each workday in which a rest period is not provided.

### G. Failure To Pay for Reporting-Time

49. Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual day's work, the employee is entitled to be paid for half said employee's usual day's work.

50. Defendants directed Plaintiffs to present themselves for work every Sunday and Tuesday at 4:15 p.m. by logging on to a website remotely without a guarantee of work. Therefore, PNA's report for work every Sunday and Tuesday at 4:15 p.m. for as long as it takes to view and select the available shifts for the upcoming week.

51. By failing to compensate Plaintiffs for the inconvenience and expense associated with making themselves available two days a week for several hours, Defendants failed to provide Plaintiffs reporting-time pay.

### H. Failure To Furnish Accurate Wage Statements

52. Plaintiffs' wage statements do not reflect the hours worked while waiting to view and select their shifts for the upcoming week, nor does it reflect their reporting-time pay. Therefore, Defendants knowingly and intentionally failed to provide accurate, itemized wage statements, including hours worked, as required under Labor Code section 226(a).

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unpaid Wages**
**(Labor Code §§ 201, 202 & 204)**

53. Plaintiffs re-allege and incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

54. The conduct of Defendants, as alleged herein, violated California Labor Code §§ 201, 202 and 204, as well as IWC Wage Order No. 9.

55. When Plaintiffs were required to remotely log on to Defendants' website every Sunday and Tuesday at 4:15 p.m. they were subject to the Defendants' control and therefore that time constitutes "hours worked."

56. By failing to compensate Plaintiffs for all hours worked, Defendants have and continue to violate Labor Code section 204 and the IWC Wage Orders, which requires employers to pay their employees their full wages when due.

57. Plaintiff Mario Mabanta and some members of the putative class are no longer working for Defendants. By failing to compensate Plaintiffs for all wages due and payable immediately at the time of discharge or resignation, Defendants violated Labor Code Sections 201 and 202.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION
### Failure to Reimburse Business Expenses
### (Labor Code § 2802)

58. Plaintiffs re-allege and incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

59. The conduct of Defendants, as alleged herein, violated California Labor Code § 2802, which provides that an employer must reimburse employees for all reasonable and necessary expenses incurred in carrying out the lawful directions of the employer.

60. At all relevant times herein, while acting on the direct instruction of Defendants, including the requirement that Plaintiffs access the internet remotely two days a week for several hours, Plaintiffs incurred work related expenses. These expenses include, but are not limited to internet and/or data costs, and computer and/or cell phone expenses. Plaintiffs incurred these necessary and substantial expenses and losses as a direct result of performing their job duties for Defendants.

61. Defendants failed to indemnify or in any manner reimburse Plaintiffs for the incurred necessary expenditures and losses. Defendants' requiring Plaintiffs to pay expenses and costs incurred in direct consequence of the discharge of their duties for Defendants and/or in obedience of Defendants' directions is in violation of Cal. Labor Code § 2802.

62. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered losses according to proof, including prejudgment interest pursuant to Cal. Labor Code §2802, subdivision (b), and costs and attorneys' fees pursuant to Cal. Labor Code §2802, subdivision (c), in the prosecution of this action.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

### THIRD CAUSE OF ACTION
**Failure to Pay Minimum Wage**
**(Labor Code §§ 1194, 1194.2 1197, 218.6)**

63. Plaintiffs re-allege and incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

64. The conduct of Defendants, as alleged herein, violated California Labor Code §§ 1194, 1194.2, 1197 and the IWC Wage Order No. 9.

65. At all times relevant times herein, Labor Code § 1197 and the IWC Minimum Wage Orders were in full force and effect and required that Defendants pay Plaintiffs the minimum wage for all hours worked.

66. At all relevant times herein, Defendants willfully and intentionally employed a practice of requiring Plaintiffs to report to work two days a week by logging on to a website remotely without any compensation. In addition, such practice also required Plaintiffs to incur necessary business expenditures, including internet costs, to perform their job. Therefore, in light of the unreimbursed business expenses, and the uncompensated hours worked, Defendants caused Plaintiffs' hourly wages to often fall below the applicable minimum wage.

67. As a result, due to Defendants' failure and refusal to pay Plaintiffs the minimum wage as required by law, Plaintiffs have suffered damages in amounts to be proven at trial and are entitled to all appropriate remedies provided by the Labor Code and IWC Wage Orders, including attorneys' fees and costs of suit, pursuant to Labor Code sections 1194, 1194.2, and 218.6.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

///
///
///

## FOURTH CAUSE OF ACTION
### Failure to Provide Rest Periods
### (Labor Code §§ 226.7)

68. Plaintiffs re-allege and incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

69. The conduct of Defendants, as alleged herein, violated California Labor Code § 226.7 and the IWC Wage Order No. 9.

70. Defendants, and each of them, required and continue to require Plaintiffs to work for periods of more than four (4) hours per day with no provision of a rest period of at least ten (10) minutes.

71. Defendants knew or should have known that Plaintiffs were working without rest periods and were not compensated for that time.

72. As a result of Defendants' conduct, Plaintiffs are entitled to all monetary and other damages permitted under the Labor Code and any other applicable law, including an additional hour of pay every time that Plaintiffs were not provided a rest break pursuant to Labor code § 226.7.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

## FIFTH CAUSE OF ACTION
### Failure to Pay for Reporting-Time
### (IWC Wage Order No. 9)

73. Plaintiffs re-allege and incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

74. The conduct of Defendants, as alleged herein, violated IWC Wage Order No. 9.

75. IWC Wage Order No. 9 provides, in pertinent part, as follows:

> Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

76. As described above, Defendants required Plaintiffs to report to work every Sunday and Tuesday at 4:15 p.m. by logging on to a website remotely without a guarantee of work.

77. By failing to compensate the Plaintiffs for the inconvenience and expense associated with making themselves available two days a week for several hours, Defendants failed to provide Plaintiffs reporting-time pay.

78. As a result of the wrongful and unlawful acts of Defendants alleged herein, Plaintiffs have been deprived of reporting time pay in amounts to be determined, and are entitled to recovery of said amounts according to proof, interest thereon, injunctive relief, and attorney's fees and costs.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

### SIXTH CAUSE OF ACTION
### Failure to Furnish Accurate Wage Statement
### (Labor Code §§ 226, 1174, 1174.5)

79. Plaintiffs re-allege and incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

80. The conduct of Defendants, as alleged herein, violated Labor Code sections 226, 1174 and 1174.5.

81. Defendants failed to keep accurate records of the hours worked by Plaintiffs.

82. Defendants also knowingly and intentionally failed to provide timely, accurate, itemized wage statements, including, *inter alia*, hours worked, to Plaintiffs as required by California Labor Code Section 226(a).

83. Such failure caused injury to Plaintiffs by, among other things, impeding them from knowing the amount of wages to which they are and were entitled.

84. Plaintiffs are entitled to and seek injunctive relief requiring Defendants to comply with Labor Code Sections 226(a) and 1174(d), and further seek all actual and statutory damages available for these violations under Labor Code Sections 226(e) and 1174.5.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

### SEVENTH CAUSE OF ACTION
### Waiting Time Penalties
### (Labor Code § 203)

85. Plaintiffs re-allege and incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

86. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by Labor Code §§ 201 and 202, then the employer is liable for waiting time penalties in the form of continued compensation for up to 30 days.

87. Plaintiffs allege that since at least 2015, Defendants have failed to pay all earned wages to Plaintiffs during their employment with Defendants. In addition, Mario Mabanta and members of the class have been discharged, laid off, resigned, retired or otherwise voluntarily left employment, but Defendants did not pay earned wages upon separation of employment in violation of Labor Code §§ 201 and 202. Defendants' conduct in this regard has been willful.

88. As a consequence of Defendants' willful failure to pay wages due to each member of the putative class following separation from employment, Plaintiffs whose employment ended during the three years prior to the date of the initial filing of this action and continuing through the date of its final disposition are entitled to recover from Defendants an additional sum as a penalty, pursuant to Labor Code § 203, equal to thirty (30) days wages per person plus interest for each employee who separated from employment with Defendants, in amounts according to proof at trial.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

### EIGHTH CAUSE OF ACTION
### Unlawful and Unfair Business Practices
### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

89. Plaintiffs re-allege and incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

90. Defendants have engaged in unlawful and unfair business practices as alleged herein. By engaging in the above-described acts and practices, Defendants have committed acts of unfair and unlawful competition within the meaning of the California Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200, *et seq*. These acts and practices constitute a continuing and ongoing unfair and unlawful business activity defined by the UCL, and justify the issuance of an injunction, restitution, and other equitable relief pursuant to the UCL.

91. Plaintiffs are informed and believe, and based upon such information and belief allege, that by engaging in the unfair and unlawful business practices complained of herein,

Defendants were able to lower their labor costs and thereby obtain a competitive advantage over law-abiding employers and businesses with which it competes.

**Unlawful Business Practices:**

92. Defendants have violated and continue to violate Business & Professions Code § 17200's prohibition against engaging in "unlawful" business acts or practices by, *inter alia*, violating and continuing to violate:

   a. Labor Code §§ 201, 202, 203 and 204, as set forth above;
   b. Labor Code § 2802, as set forth above;
   c. Labor Code §§ 1194 and 1197, as set forth above;
   d. Labor Code § 226.7, as set forth above;
   e. IWC Wage Order No. 9, as set forth above;
   f. Labor Code §§ 226 and 1174, as set forth above;

93. Plaintiffs have suffered injury in fact and lost money and/or property as a result of Defendants' unlawful business acts and practices by, *inter alia*, being deprived of compensation for all hours worked.

**Unfair Business Practices:**

94. Defendants' acts and practices, as described above, constitute unfair business practices within the meaning of Business and Professions Code, §§ 17200, *et seq*. Such acts and practices were against established public policy and were pursued to attain an unjustified monetary advantage for Defendants by creating personal disadvantage and hardship to its employees.

95. Defendants' conduct does not benefit workers or competition. Indeed, the injury to Plaintiffs as a result of Amazon's conduct is far greater than any alleged countervailing benefit. Plaintiffs could not have reasonably avoided the injury they suffered.

96. The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive or reason, and therefore is immoral, unethical, oppressive, unscrupulous and is contrary to the public welfare because it transgresses civil statutes of the state of California designed to protect workers from exploitation.

97. Plaintiffs have suffered injury in fact and lost money and/or property as a result of Amazon's unfair business acts and practices by, *inter alia*, being deprived of compensation for all hours worked.

98. Defendants, by and through their unlawful and unfair business practices and acts described herein, have obtained valuable services from Plaintiffs and have deprived Plaintiffs of valuable rights and benefits guaranteed by law, all to their detriment. Plaintiffs seek an award of restitution, disgorgement, injunctive relief and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

A. For an order certifying this case as a class action and appointing Plaintiff Mario Mabanta and his counsel to represent the Class;

B. For actual and compensatory damages according to proof pursuant to the California Labor Code, applicable California IWC Wage Orders, and all other applicable laws and regulations;

C. For restitution and disgorgement to the extent permitted by applicable law;

D. For an Order enjoining Defendants from continuing to engaged in the conduct described herein;

E. For a declaratory judgment that the policies and practiced complained of herein are unlawful under the laws of California;

F. For civil and statutory penalties available under applicable law;

G. For Pre-Judgment and Post-Judgment interest, as provided by law;

H. For Attorney's fees and costs of suit, including expert fees and fees pursuant to California Labor Code Sections 218.5 and 1194, California Code Civil Procedure Section 1021.5, and other applicable laws;

I. For punitive damages according to proof; and

J. For such other and further relief as this Court may deem just and proper.

///

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims to which a right to jury trial exists.

Dated: February 26, 2020

HERSH & HERSH,
A Professional Corporation

By _____
Mark E. Burton, Jr.
Josue Aparicio